UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TIMOTHY L. HENKE, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case no. 4:06cv0225 TCM |
| ) | |
| MICHAEL MURPHY, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM AND ORDER

The 28 U.S.C. § 2254 petition of Timothy Henke, a Missouri prisoner serving an aggregate ten year sentence, for federal habeas corpus relief is before the undersigned Magistrate Judge for a final disposition pursuant to the parties's written consent. See 28 U.S.C. § 636(c).

## Background

In October 2001, Timothy Henke ("Petitioner") was found guilty by a jury of second degree assault of a law enforcement officer and of resisting arrest. (Resp. Ex. A at 202.) The evidence at the trial, presided over by the Honorable Keith M. Sutherland, Missouri Circuit Court Judge for Warren County, was summarized by the state appellate court as follows.

> Shortly after 11:00 p.m. on December 25, 2000, Officer Brian Odom (Odom) was dispatched to a residence for an assault in progress call. When he arrived at the residence, a man met Odom out front. The man told Odom that [Petitioner] had bitten him on the neck. Odom, hearing arguing and yelling

inside the residence, knocked on the unlocked door and walked into the residence to investigate.

Once inside the residence, Odom encountered a group of people, including [Petitioner]. Odom identified himself as a police officer and the group yelled at him to leave the residence. [Petitioner] was very irate and belligerent towards Odom and yelled at him to get out. Odom tried to explain that he was there to investigate a possible crime. [Petitioner] did not cooperate with any request of Odom.

[Petitioner] took an aggressive stance toward Odom and then he went to the kitchen and grabbed a steak knife. [Petitioner] then turned towards Odom and told him to "get out of my house you stupid looking' bald —----- F----. I'm gonna take care of you." [Petitioner] continued to make threats toward Odom while he held the knife. When [Petitioner] started walking toward Odom, Odom held his baton in his hand. He then dropped his baton, ordered [Petitioner] to drop the knife, and drew his weapon and pointed it at [Petitioner]. [Petitioner] continued to approach Odom, pointing the knife at him in an aggressive manner and making threats. Odom became backed up against a wall with [Petitioner] about twelve to fifteen feet away from him. Odom felt in danger for his physical safety because he felt that based on [Petitioner's] actions, [Petitioner] intended to stab him. Odom again ordered [Petitioner] to stop and to put the knife down and told [Petitioner] that he was under arrest.

[Petitioner] returned to the kitchen and put the knife back. Odom ordered [Petitioner] to stop because he was under arrest. Odom approached [Petitioner], but [Petitioner] fled to a bedroom at the rear of the residence. En route, Odom grabbed hold of the back of [Petitioner's] shirt, but [Petitioner] pulled loose and closed the door to the bedroom. Odom attempted to force the door open and when his arm was in the door trying to grab hold of [Petitioner] again, [Petitioner] slammed the door on Odom's arm.

At that point, for his safety, Odom decided to wait for additional officers to arrive, which they did in about three to four minutes. Odom and another officer went into the bedroom, but [Petitioner] was no longer there. Odom put out a radio description of [Petitioner] and officers searched the surrounding area.

About forty-five minutes later, [Petitioner] returned to the residence. Upon his approach, officers told [Petitioner] that he was under arrest and

attempted to handcuff him. [Petitioner] physically resisted the officers. After finally subduing [Petitioner], the officers arrested him and placed him in the back seat of Odom's patrol car.

(Resp. Ex. E at 2-3.) Odom testified about the events in the residence and about being kicked in the head by Petitioner after Petitioner was placed in the back seat of the police car. (Resp. Ex. A at 57-82.) Three officers testified about Petitioner's behavior after he returned to the residence. (Id. at 91-117.) A woman, Terry Hess, staying at the residence the night of December 25, 2000, briefly testified about Petitioner holding a knife, pointing it at Odom, and refusing to put the knife down after being ordered to do so by Odom. (Id. at 83-90.)

Petitioner called his girlfriend, Ella Hazelhorst, to testify as his only witness. (Id. at 118-63.) She testified that it was Hess who bit the other man on the neck. (Id. at 119.) Odom pushed in the front door and, after seeing Hess sitting on the couch crying, beat Petitioner with his handgun and billy club. (Id. at 121-126.) The beating did not stop until Petitioner crawled away. (Id. at 127-28.) Petitioner did not have a knife. (Id. at 127, 131.) Another officer arrived, told her she was under arrest, and joined with Odom in beating Petitioner. (Id. at 127-30.) She described Petitioner's appearance after being beaten, including the loss of his front teeth. (Id. at 130, 132, 137.) Neither officer told Petitioner he was under arrest. (Id. at 130-31.)

In rebuttal, the prosecutor called the four witnesses he had called on direct and called the custodian of records for the Warren County Jail. This last witness testified that it had not been noted on Petitioner's medical forms when he was booked that he had any missing or loose teeth or bleeding or split mouth, lips, or ears. (Id. at 174-80.) If Petitioner had had any

of these problems, they would have been noted on the forms. (Id. at 179.) He was not present when Petitioner was booked. (Id. at 181.)

Petitioner appealed his conviction on two grounds, challenging first the sufficiency of the evidence on the assault charge and second the trial court's failure to sua sponte declare a mistrial after Odom referred to Petitioner's history of violence toward police officers. (Resp. Ex. C at 8-9.) Both were found to be without merit. (Resp. Ex. E.)

Petitioner next sought post-conviction relief. (Resp. Ex. G at 6-12.) His motion was amended by counsel and denied following an evidentiary hearing, at which Hazelhorst, Petitioner, and trial counsel testified, and the admission of depositions of Judge Sutherland and Paul J. Dooley, D.D.S. (Id. at 13-32.) Judge Sutherland had presided over Petitioner's arraignment before he was elevated from Associate Circuit Judge to Circuit Judge. (Resp. Ex. H(2) at 6.) Judge Sutherland testified that he recalled that Petitioner had some injuries to his face and mouth at his arraignment. (Id. at 7, 8.) He could not recall if Petitioner had any broken front teeth. (Id. at 7.) If he had been subpoenaed to testify at trial, he would have recused himself from presiding over Petitioner's trial. (Id. at 9.) Judge Sutherland thought that Petitioner had complained about the arresting officer hitting him. (Id. at 10-11.) Dr. Dooley testified that he performed dental work on Petitioner on January 5, 2001. (Resp. Ex. H(3) at 6.) His two front teeth were broken off. (Id.) Petitioner had told him that the teeth had broken off in a fight with police. (Id. at 8.) The teeth that had broken off were decayed; normal chewing would have broken them. (Id. at 9.) Dr. Dooley did not know what made the teeth break. (Id. at 13.) His records would generally have included any

notation of lacerations around the mouth, but there were no such notations in Petitioner's records. (Id. at 14.) A cut on the inside of the mouth generally heals within five days; a cut on the outside generally heals within ten days. (Id. at 16.)

Trial counsel testified that he had not subpoenaed Judge Sutherland or otherwise tried to call him as a witness because he thought the Judge might be more favorable to Petitioner after seeing his condition at the arraignment. (Resp. Ex. F at 33.) He had discussed this with Petitioner, but could not recall whether Petitioner specifically consented to this strategy or if he simply had the impression that Petitioner had consented. (Id. at 33-34.) He decided not to call Dr. Dooley because he had not taken his deposition and (a) did not like calling anyone as a witness without first deposing them and (b) without having deposed Dr. Dooley, did not know what he would say about any blunt trauma or Petitioner's oral hygiene. (Id. at 34-35, 41.) He did not depose Dr. Dooley because Petitioner was unable to come up with the deposit money for the court reporter. (Id. at 35-36.) Petitioner testified that he never agreed not to call Judge Sutherland and Dr. Dooley as witnesses. (Id. at 48-49.)

The motion court denied relief, finding, in relevant part, that (a) trial counsel had consulted and made the decision with Petitioner about a change of judge; (b) Judge Sutherland's testimony addressed only the inside of Petitioner's mouth, therefore, he would have been unable to refute Petitioner's appearance in his booking photographs that showed no signs of exterior injuries to his mouth or face[1]; (c) Plaintiff's statement to Judge

---

[1]Petitioner explained at the evidentiary hearing that the photographs, Respondent's Exhibit H(1), were not taken the day of the booking. (Resp. Ex. F at 51-53.)

Sutherland that he needed medical attention for his teeth because his nerves were hanging out would have been inconsistent with Dr. Dooley's testimony that Plaintiff had had previous root canals; and (d) Petitioner knew Judge Sutherland would be presiding over his trial, but made no contemporaneous objection. (Resp. Ex. G at 30-31.) Addressing Petitioner's claim about Dr. Dooley, the motion court found that (i) trial counsel had discussed with Petitioner his decision not to depose Dr. Dooley without additional monies and not to call him at trial; (ii) Petitioner's failure to discharge his retained trial counsel or to request a continuance after learning that trial counsel would not depose Dr. Dooley indicated his acceptance of, and agreement with, that trial strategy; (iii) Dr. Dooley's assessment of Petitioner's mouth indicated that the problems existed prior to his arrest and his teeth could have been broken by simply eating supper; and (iv) Dr. Dooley would also have testified that the pain Petitioner experienced would not have come from exposed nerves of his teeth. (Id. at 31.)

Petitioner appealed only on the ground that trial counsel had been ineffective for not calling Judge Sutherland to testify as he would have corroborated Hazelhorst's testimony that Plaintiff was assaulted by officers and would have impeached the officers's contradictory testimony. (Resp. Ex. I.) The appellate court disagreed, finding that Petitioner had failed to demonstrate that Judge Sutherland's testimony would have provided him with a viable defense. (Id. at 5.) That testimony would only have established that Petitioner had an injury to his mouth, not that he was attacked by police officers without provocation. (Id.) And, Judge Sutherland's observation about the condition of Petitioner's mouth at his arraignment

would not have proved that Petitioner had acted in self-defense. (Id.) "Given that Judge Sutherland saw only a cut to the inside of [Petitioner's] mouth, he could neither corroborate [Petitioner's] theory that he was brutally attacked nor challenge the accuracy of the booking photographs, which demonstrate no traumatic facial injuries." (Id. at 6.)

Petitioner now moves for federal habeas relief on the grounds that his trial counsel was ineffective for failing to investigate, interview, and call as witnesses Dr. Dooley and Judge Sutherland. Respondent counters that the first argument is procedurally barred by Petitioner's failure to raise it in his post-conviction appeal and the second is without merit.

## Discussion

Ground One: Dr. Dooley. It is undisputed that Petitioner's claim that his trial counsel was ineffective for not interviewing and calling Dr. Dooley as a witness was not presented in his post-conviction appeal. Petitioner does not advance any reason for this omission.

Title 28 U.S.C. § 2254(b)(1)(A) and the Supreme Court bar the granting of habeas corpus relief unless it appears that the state prisoner has exhausted available state court remedies. See **Gray v. Netherland**, 518 U.S. 152, 161 (1996); **Coleman v. Thompson**, 501 U.S. 722, 730 (1991). "Because 'it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation,' federal courts apply the doctrine of comity, which teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.'" **Id.** at 731 (quoting Rose v. Lundy, 455

U.S. 509, 518 (1982)). See also **Weeks v. Bowersox**, 119 F.3d 1342, 1349-50 (8th Cir. 1997) (en banc) ("Requiring the exhaustion of state remedies both allows the states to correct any possible constitutional violations without unnecessary intrusion by the federal courts and allows the state courts to create a factual record should the matter proceed to federal court."). "To satisfy the exhaustion requirement, [a habeas petitioner] must show that he either made a fair presentation of his claims to the state courts or that he has no other presently available state remedies to pursue." **Gentry v. Lansdown**, 175 F.3d 1082, 1083 (8th Cir. 1999). "A petitioner meets the fair presentation requirement if the state court rules on the merits of his claims, or he presents his claims in a manner that entitles him to a ruling on the merits." **Id.**

In the instant case, the motion court ruled on the merits of Petitioner's claims about Dr. Dooley and Judge Sutherland. Missouri Supreme Court Rule 29.15(k) entitles Petitioner to an appeal from the ruling. However, he pursued on appeal only his claim about Judge Sutherland. There is no remaining state court remedy for Petitioner to appeal his claim about Dr. Dooley. It is, therefore, procedurally defaulted. See **Interiano v. Dormire**, 471 F.3d 854, 856 (8th Cir. 2006); **Moore-El v. Luebbers**, 446 F.3d 890, 897 (8th Cir. 2006); **Osborne v. Purkett**, 411 F.3d 911, 919 (8th Cir. 2005); **Lowe-Bey v. Groose**, 28 F.3d 816, 818 (8th Cir. 1994).

Consequently, the merits of Petitioner's claim about Dr. Dooley may not be reached "unless [Petitioner] can show cause and prejudice for the default, or actual innocence." **Clemons v. Luebbers**, 381 F.3d 744, 750 (8th Cir. 2004). "'[T]he existence of cause for a

procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" **Ervin v. Delo**, 194 F.3d 908, 915 (8th Cir. 1999) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)) (alteration in original).  There is no exhaustive catalog of the objective impediments, nor have the precise contours of the cause requirement been clearly defined. **Ivy v. Caspari**, 173 F.3d 1136, 1140 (8th Cir. 1999).  "At a minimum, however, [Petitioner] must show that 'something *external* to [him], something that cannot fairly be attributed to him,' caused the procedural default."  **Id.** (quoting Coleman, 501 U.S. at 753) (second alteration in original).  And, "[i]f a prisoner fails to demonstrate cause, the court need not address prejudice."  **Cagle v. Norris**, 474 F.3d 1090, 1099 (8th Cir. 2007).

Petitioner has failed to demonstrate cause for his default.  Indeed, he has not even alleged that there is cause for his failure to raise his Dr. Dooley claim in his post-conviction appeal.[2]

Petitioner does argue that he acted in self-defense against Odom's assault.  Although the merits of his defaulted claim could be reached if he "ma[de] a showing, based on new

---

[2]Were Petitioner to allege that the ineffective assistance of post-conviction counsel is cause for his default, such argument would be unavailing.  "A defendant . . . has no constitutional right to effective assistance of post-conviction counsel."  **Sweet v. Delo**, 125 F.3d 1144, 1151 (8th Cir. 1997).  "Absent a constitutional right, [Petitioner] cannot claim ineffective assistance of post-conviction counsel as cause for his procedural default."  **Id.**  "[T]his principle applies to claims of ineffective assistance of Rule 29.15 counsel in Missouri."  **Id.**  See also **Interiano**, 471 F.3d at 857 (finding that claims not raised on appeal from Rule 29.15 motion were procedurally barred).

evidence, that a 'constitutional violation has probably resulted in the conviction of one who is actually innocent,'" **Brownlow v. Groose**, 66 F.3d 997, 999 (8th Cir. 1995), the new evidence must be reliable evidence that was not presented at trial, **Wyldes v. Hundley**, 69 F.3d 247, 254 (8th Cir. 1995), and "could not have been discovered earlier in the exercise of due diligence," **Cornell v. Nix**, 976 F.2d 376, 380 (8th Cir. 1992) (en banc). Dr. Dooley's evidence does not fit within this narrow exception. On the contrary, it could have discovered but was not for reasons explained by trial counsel in the evidentiary hearing. New evidence sufficient to establish the actual innocence exception must also be such that "'it is more likely than not that no reasonable juror would have convicted [the petitioner]'" had the new evidence been presented at trial. **Nance v. Norris**, 392 F.3d 284, 291 (8th Cir. 2004) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Dr. Dooley's evidence fails this test too. His evidence, at best, would have been that Petitioner told him eleven days after the incident that police officers had beaten him. The jury heard, and rejected, the firsthand testimony of his girlfriend that Petitioner was beaten by police. The jury would also have heard Dr. Dooley's testimony that Petitioner's dental problems were as consistent with chewing as with being beaten.

    Ground Two: Judge Sutherland. Petitioner did present on appeal his claim that his trial counsel was ineffective for failing to subpoena Judge Sutherland to testify about Petitioner's appearance at arraignment and his report of being beating by police. The state courts found this argument unavailing on the grounds that Judge Sutherland's testimony

would not have corroborated Petitioner's self-defense theory and would not have contradicted Petitioner's uninjured appearance in the booking photographs.

"To succeed on a Sixth Amendment ineffective assistance of counsel claim, [Petitioner] must demonstrate (1) trial counsel's performance was so deficient as to fall below an objective standard of the customary skill and diligence displayed by a reasonably competent attorney, and (2) trial counsel's deficient performance prejudiced the defense." **Armstrong v. Kemna**, 534 F.3d 857, 863 (8th Cir. 2008) (citing Strickland v. Washington, 466 U.S. 668, 687-94 (1984)). "'Judicial scrutiny of counsel's performance is highly deferential, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment.'" **Id.** (quoting Middleton v. Roper, 455 F.3d 838, 846 (8th Cir. 2006)).

Trial counsel testified in the evidentiary hearing that he thought Judge Sutherland would be more advantageous to Petitioner presiding over his trial than testifying as a witness. "Trial counsel's strategic decisions are 'virtually unchallengeable unless they are based on deficient investigation, in which case the presumption of sound trial strategy . . . founders on the rocks of ignorance.'" **Forsyth v. Ault**, 537 F.3d 887, 892 (8th Cir. 2008) (quoting Link v. Luebbers, 469 F.3d 1197, 1204 (8th Cir.2006)) (alteration in original); accord **White v. Roper**, 416 F.3d 728, 732 (8th Cir. 2005). Trial counsel's investigation of Judge Sutherland's testimony supports, rather than defeats, the presumption. Judge Sutherland's testimony about Petitioner's claim that police officers attacked him would have been

cumulative at best, see **Bucklew v. Luebbers**, 436 F.3d 1010, 1017-18 (8th Cir. 2006) (trial counsel not ineffective for failing to call witness whose testimony included that which would not have been helpful to defense and that which was cumulative); **Helmig v. Kemna**, 461 F.3d 960, 967 (8th Cir. 2006) (finding that trial counsel was not ineffective for failing to call witnesses who, according to state courts's findings, would not have provided defense), and would have precluded him from presiding over Petitioner's trial, which trial counsel deemed to be beneficial to Petitioner. Petitioner has failed to show that trial counsel's decision not to call Judge Sutherland was deficient or prejudicial. His claim otherwise is without merit.

Requests for Discovery and an Evidentiary Hearing. In his § 2254 petition, Petitioner requests leave to engage in discovery and also requests an evidentiary hearing. Both requests are denied.

"'A habeas petitioner, unlike the civil litigant in federal court, is not entitled to discovery as a matter of ordinary course.'" **Newton v. Kemna**, 354 F.3d 776, 783 (8th Cir. 2004) (quoting Bracy v. Gramley, 520 U.S. 899, 904 (1997)). Rule 6(a) of the Rules Governing 28 U.S.C. § 2254 Cases permits a court to allow such discovery on a showing of good cause. **Id.** Petitioner's nondefaulted claim depends on his trial counsel and Judge Sutherland. The former testified at the post-conviction evidentiary hearing; the latter testified by deposition. Petitioner cites to no other information the development of which would demonstrate that he is entitled to habeas relief. See **Id.** (requiring such for discovery to be warranted).

The circumstances under which this Court may hold an evidentiary hearing in a § 2254 case are severely restricted. See 28 U.S.C. § 2254(e)(2). "To overcome this hurdle a petitioner must show that the claim involves a new rule of constitutional law made retroactive to his situation, or facts that could not have been discovered by due diligence, or sufficient facts to establish constitutional error by clear and convincing evidence." **Hall v. Luebbers**, 296 F.3d 685, 700 (8th Cir. 2002) (citing § 2254(e)(2)). As made clear above in the discussion on the Petitioner's two claims, Petitioner has failed to make this showing.

### Conclusion

For the foregoing reasons, Petitioner's first § 2254 claim is procedurally barred, and his second is without merit.[3] Accordingly,

**IT IS HEREBY ORDERED** that the 28 U.S.C. § 2254 petition of Timothy Henke is **DENIED** without further proceedings.

**IT IS FURTHER ORDERED** that the Clerk of Court is to send Petitioner a copy of this Memorandum and Order and the accompanying Judgment.

An appropriate Judgment shall accompany this Memorandum and Order.

/s/ Thomas C. Mummert, III

---

[3] The Court is grateful to appointed counsel for his diligent and vigorous presentation of Petitioner's claims. By this Memorandum and Order, counsel is relieved of his appointment.

                                                                         THOMAS C. MUMMERT, III
                                                                     UNITED STATES MAGISTRATE JUDGE

Dated this  18th  day of February, 2009.